```
 1                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF VIRGINIA
 2                       ROANOKE DIVISION

 3   UNITED STATES OF AMERICA,
                                        No. 4:18-cr-11
 4                    Plaintiff,
                                        Roanoke, Virginia
 5        vs.                           June 19, 2018
                                        2:59 p.m.
 6   ASHLEY TIANA ROSS,
     TENIKQUA FULLER,
 7
                          Defendants.
 8
                       TRANSCRIPT OF DETENTION HEARING
 9                     BEFORE THE HONORABLE JOEL HOPPE
                       UNITED STATES MAGISTRATE JUDGE.
10   APPEARANCES:

11   For the Government:

12   HEATHER R. CARLTON
     RONALD MITCHELL HUBER
13   United States Attorneys Office
     Room 104
14   255 West Main Street
     Charlottesville, VA 22902
15   434-293-4283

16   For the Defendant ROSS:            For the Defendant FULLER:

17   TERRY NEILL GRIMES                 CORREY A. DIVINEY
     BRITTANY HADDOX                    Arthur P. Strickland, P.C.
18   Terry N. Grimes, Esq., PC          PO Box 2866
     Franklin Commons                   Roanoke, VA 24001
19   320 Elm Avenue SW                  540-982-7787
     Roanoke, VA 24016-4002
20   540-982-3711

21   Transcribed by:  Carol Jacobs White
                      Registered Diplomate Reporter
22                    PO Box 182
                      Goode, VA 24556
23                    Carol.jacobs.white@gmail.com

24       Proceedings recorded by FTR; computer-assisted transcription.

25
```

```
 1        (Call to Order of the Court at 2:59:41 p.m.)

 2             THE COURT:  Is Ms. Ross ready to proceed?

 3             MR. GRIMES:  She is, Your Honor.

 4             THE COURT:  All right.  And, Mr. Diviney, is Ms. Fuller

 5   ready to proceed?

 6             MR. DIVINEY:  She's ready, Your Honor.

 7             THE COURT:  All right.

 8             All right.  Ms. Carlton, what are the conditions that you

 9   would suggest?  Are they any different from those identified in the

10   pretrial services report?

11             MS. CARLTON:  Well, Your Honor, I would note that the two

12   recommendations -- the recommendation for Ms. Ross and the

13   recommendation for Ms. Fuller, although they appear to be in the

14   same circumstances, vary.  So the conditions that matter to the

15   United States are a stay-away/no-contact provision.  And I can

16   -- it would be, obviously, from any of their codefendants in this

17   case as well as any of the defendants in the related matters.  And

18   I can either provide a list to the Court of those defendant names

19   or -- I don't know how best the Court would like to proceed.

20             THE COURT:  Well, I can --

21             MS. CARLTON:  It is a list too long, probably, to fit in

22   the space on your form.

23             THE COURT:  Right.  I think it is.  So --

24             MS. CARLTON:  I don't know whether the proper --

25   appropriate way to do this is to maybe type up a list and attach it
```

1    to your order so it is very clear who these individuals are.  But

2    it would be the defendants in this case, the defendants in a

3    related case, and then I have a list of four individuals who I am

4    willing to name who are potential witnesses, and the rest I'll just

5    leave generically as potential or likely witnesses in the case.

6            THE COURT:  Why don't we do this?  Why don't you say who

7    those folks are so that the defendants and their counsel can hear

8    and they can address it at the hearing.  And then I think it would

9    be helpful to have a written list that we can attach to the bond

10   conditions.

11           MS. CARLTON:  Yes, Your Honor.  The four individuals that

12   can be named are Taniqua Guy, T-A-N-I-Q-U-A, Guy, G-U-Y; Jaquan

13   Trent, J-A-Q-U-A-N, Trent, T-R-E-N-T; Stevie Johnson, obvious

14   spellings for both names; and Melik Smith, with Melik being

15   M-E-L-I-K.  As well as the defendants, like I said, in this case as

16   well as the related case.  I'm happy to name those.

17           THE COURT:  All right.

18           Mr. Grimes, anything you want to say on the codefendants

19   and witnesses who Ms. Ross should not have contact with, according

20   to the government?

21           MR. GRIMES:  No, Your Honor.  I have no objection.

22           THE COURT:  Okay.  Mr. Diviney.

23           MR. DIVINEY:  Judge, if we could just repeat those four

24   names briefly, make sure I have a record of them.

25           MS. CARLTON:  Taniqua Guy, Jaquan Trent, Stevie Johnson,

Melik Smith, and the codefendants in this case and the related

indictment.

          MR. DIVINEY:  Okay.

          MS. CARLTON:  And, Your Honor, I apologize.  I did not

say the victims -- the surviving victims as well as their families.

          MR. DIVINEY:  Judge, we don't have any objection to them

having no contact with those on that list.

          THE COURT:  All right.  Ms. Carlton, were there any other

conditions that you wanted to address?

          MS. CARLTON:  I think all of the usual ones, so I won't

go through them; can't obtain a passport; can't travel outside the

district; can't consume illegal substances; the usual prohibition

on firearms or other weapons.

          Specifically, Ms. Ross has -- the pretrial report

indicates that she might be residing with an individual who we have

seen pictures on social media with multiple firearms.  We would

want that individual not in the house.  That is Eddie Willard, Jr.

          And then I -- for Ms. Ross there was a suggestion to

submit to a search of person, residence, vehicle, or office.  If

Your Honor grants that particular recommendation by the probation

office, we would ask that it be applied to Ms. Fuller as well and

that it be extended to his cell phone as well as Facebook account.

We would note that text messaging and private Facebook messages

were used to discuss crimes as well as a form of communication

between codefendants.

1          THE COURT:  There be access for the probation office to

2    Facebook and any email accounts is what you are suggesting?

3          MS. CARLTON:  Specifically cell phone or electronic

4    device that they would use to access those accounts.  And that

5    would be for the probation officer; not looking for evidence, just

6    monitoring their communications with other individuals.

7          THE COURT:  All right.  Yes, ma'am?

8          MS. CARLTON:  Sorry.  The only other provision would be

9    GPS monitoring.  I believe they each have homes they live in or

10   -- one of them was located at that address, but the other was not.

11   But the GPS monitoring of the defendants, I spoke to Ms. Ross's

12   counsel, I don't think that's opposed.  I didn't have an

13   opportunity to talk to Ms. Fuller's counsel.

14         THE COURT:  And are you suggesting that they should be on

15   home detention as well or just GPS, to monitor where they are

16   going?

17         MS. CARLTON:  I think the GPS, to monitor where they are

18   going.  I understand that there's a potential cellular GPS

19   monitoring, which might be appropriate.

20         THE COURT:  Well, what would be -- what would be

21   prohibited?  Because I think typically we use GPS if the probation

22   is trying to ensure that someone is going to other places or

23   whether they're staying in their residence.  What would be the

24   purpose of just a general GPS to monitor location?

25         MS. CARLTON:  To make sure that they are not going into

specific places. It is part of monitoring two women who have been
accused of tampering with a case and of tampering with the grand
jury specifically -- or one specifically tampering with the grand
jury. And so the GPS monitoring of their general location would
help ensure that, if there's an allegation that they
witness-tampered in person, we would be able to confirm whether
they were in that location or not.

THE COURT: All right. So if they are having contact
with any of the folks who they have been directed not to have
contact with, that's the purpose for GPS?

MS. CARLTON: Yes, Your Honor, to ensure that -- I -- it
is the reason we would ask for the search on the cell phone. It is
analogous -- you know, you can communicate with people undetected
through your cell phone. So if probation is allowed to search to
check that condition, then the GPS ensures that they are also not
tampering with -- obstructing this case or tampering with witnesses
in person.

THE COURT: All right. Mr. Grimes, anything you would
like to say about Mr. Willard not living in the residence -- and
that's Ms. Ross's brother, as I understand it? Is that correct?

MR. GRIMES: There's no objection to that matter, Your
Honor.

With respect to monitoring of electronic communications
by cell phone or otherwise, one concern that I have is invasion of
attorney-client privilege. We also don't know that the government

1  should particularly know when she's coming to our office for

2  attorney-client visits.

3          THE COURT:  All right.

4          MS. CARLTON:  Well, just for the clarity of the record

5  and the Court, I mean, when the probation office monitors

6  defendants in this way, they are not communicating that information

7  to the government.  In fact, that's a frustration of the

8  government's:  We would like to know more about what is going on

9  with the defendant while they are on pretrial release.  They

10  communicate that to the Court, who makes the appropriate decision

11  at that point whether to set a revocation hearing or not.

12          THE COURT:  Well, I certainly can put in conditions

13  that -- what access to cell phones -- probation's access to cell

14  phones and Facebook or email accounts would exclude any attorney-

15  client communications.  It is not uncommon if somebody is on home

16  detention for that person to have to get permission from a

17  probation officer to leave the house to go to an attorney's office.

18  I don't know that there's a concern with Ms. Ross going to -- with

19  probation knowing that Ms. Ross has gone to your office.  But other

20  communications between the attorney and client, certainly that's

21  off -- off-limits.

22          All right.  Mr. Diviney, on any of the conditions that we

23  have discussed, do you have anything you would like to say?

24          MR. DIVINEY:  Judge, I don't know that I have any

25  specific objection to the GPS suggestion.  And, frankly, I don't

know exactly what it is the government is suggesting in this case. To the extent that my client would be required to participate economically in paying for that, I think she's just not in a position to do that.

In all likelihood, she has lost her job. There's a provision in here to obtain and maintain employment. I think she has now missed three shifts with her employer. So I -- once again, if it is required that she participate in funding this kind of monitoring, she can't do that.

And I would ask for some flexibility with that maintaining and obtaining employment provision. As I understand it -- and I'm not an expert, but as I understand it, this area that Ms. Fuller lives in is -- has experienced a lot of economic hardship in the last many years and it may be tough for her to replace that job in the immediate future.

THE COURT: All right. Well, I think it is certainly important for her to try and get employment and, you know, be employed.

It will help you in a lot of ways. So I'm sure you are going to give it your best effort. And probation is here to help you with that and provide some guidance as well.

Does the probation office need a time to do a home study or investigate the proposed residences or are they okay being released?

THE PROBATION OFFICER: If the Court will require us to

1   do so, Your Honor.

2            THE COURT:  But you don't think it is necessary?

3            THE PROBATION OFFICER:  If you say we need to.  Typically

4   we would anyway, because it is part of our inspection purposes.

5   Once we accept the case and once that person is released to

6   monitoring, we actually go through the house anyway.

7            THE COURT:  Okay.  But you would do that when -- when

8   Ms. Fuller and Ms. Ross are released, not necessarily need to do it

9   beforehand?

10           THE PROBATION OFFICER:  Correct.

11           THE COURT:  Okay.

12           All right.

13       (Pause.)

14           THE COURT:  While I'm working on the bond paperwork, I

15   would ask that Ms. Fuller and Ms. Ross fill out these bail

16   information sheets.

17       (Pause.)

18       (Off-the-record discussion between the Court and the clerk.)

19           THE COURT:  What is the probation office's phone number?

20           PROBATION OFFICER:  (Inaudible.)

21           THE COURT:  Well, whoever they are going to be reporting

22   to?

23       (Off-the-record discussion between the Court and the clerk and

24   the probation officer.)

25           THE COURT:  How about if I give them the Roanoke number

1  and you can route it through?

2      (Off-the-record discussion between the Court and the clerk.)

3      (Pause.)

4          THE COURT:  All right.  Ms. Ross and Ms. Fuller, here are

5  the conditions of your release.  Most of them are the same, but

6  there are a couple that are unique to each of you.  But I'll go

7  through the list of those that are the same first.

8          You are going to be released on a $10,000 unsecured bond,

9  which means that you don't have to put up any money to be released.

10  But if you were to violate the conditions of this bond, the

11  government could obtain a $10,000 judgment against you for

12  violation of the bond.

13          You must not violate any federal, state, or local law

14  while on release.  You must cooperate in the collection of a DNA

15  sample if required by federal law.  You must immediately advise the

16  Court, defense counsel, and the United States Attorney in writing

17  before any change of address or telephone number.

18          Now, we don't have a trial date scheduled in this matter

19  or the next hearing, but you will be required to appear in court as

20  scheduled by the Court.

21          You'll have to report to the probation office upon

22  release.

23          You must maintain or actively seek employment.

24          You may not obtain a passport.

25          You may not travel outside of the Western District of

1 Virginia. You must remain inside the Western District of Virginia

2 unless you get prior approval of the probation office.

3 You must avoid all contact, directly or indirectly, with

4 any person who is or may become a victim or potential witness in

5 the investigation or prosecution. And that covers all

6 codefendants, the witnesses that we identified. And there's a list

7 that is going to be attached to your conditions that identifies all

8 of these people. It includes victims and the victims' families.

9 Now, by direct or indirect, what that means is -- direct

10 is you having a conversation; you speaking, you know, contacting,

11 writing a letter or something, sending a message directly to a

12 codefendant. Now, indirect is you sending a message through

13 somebody or some other contact where you're not having -- you are

14 not the one who is, you know, talking face-to-face with somebody,

15 but you are passing a message or something. You can't do that

16 either. So there is no contact, period, with any of the people on

17 this list.

18 Now, you may not possess a firearm, destructive device,

19 or other dangerous weapon. You must refrain from excessively using

20 alcohol.

21 You may not possess an unlawful narcotic drug or other

22 controlled substance unless prescribed by a licensed medical

23 practitioner.

24 You may not associate with any known illegal users or

25 possessors of controlled substances and shall not be present in any

1  location where controlled substances are being illegally used

2  and/or distributed unless approved by the supervising officer in

3  cooperation with law enforcement officers.

4  You must submit to any testing required by the pretrial

5  services office or the supervising officer, to determine whether

6  you are using a prohibited substance.  And this means that you can

7  be subjected to testing, such as urinalysis.

8  Now, you will have to submit to location monitoring.  I'm

9  not going to require that you pay for the cost of that program, but

10  it is going to be active GPS location monitoring.

11  You'll have to report as soon as possible to the pretrial

12  services office any contact with law enforcement, including traffic

13  stops, arrests, questioning, anything.

14  You'll have to follow the directions and the instructions

15  of the supervising officer.

16  And you'll have to submit to the search of your person,

17  your residence, vehicle, and any communication device, such as a

18  cell phone, by the probation office, but excluding any attorney-

19  client communications.

20  Now, Ms. Fuller, additionally, there is a condition that

21  you -- if it is deemed advisable by the probation office, that you

22  must undergo medical or psychiatric treatment.

23  And, Ms. Ross, one additional condition for you is that

24  you shall not reside in a residence with Eddie Willard, Jr.

25  Now, Ms. Carlton, was there anything -- any additional

1    suggested condition?

2              MS. CARLTON:  No, Your Honor.  Thank you.

3              THE COURT:  Mr. Grimes, anything that you would like to

4    say?

5              MR. GRIMES:  No, Your Honor.

6              THE COURT:  All right.  Mr. Diviney?

7              MR. DIVINEY:  No, Your Honor.

8              THE COURT:  Does probation have anything additional?

9              THE PROBATION OFFICER:  No, Your Honor.

10             THE COURT:  All right.  Now, Ms. Ross and Ms. Fuller, I

11   already told you about one of the possible consequences or

12   penalties if you violate these conditions, and that could be that

13   the government could obtain a judgment against you for $10,000.  So

14   that unsecured bond could be revoked.

15             Now, your bond could be revoked as well.  An arrest

16   warrant could be issued for you.  And you could be held in

17   detention for the duration of this case.  You could also be found

18   in contempt of court for violating this order releasing you.

19             Now, there are other very serious penalties if you are to

20   violate any of these conditions.  Now, if you commit another

21   federal offense while you are on release, you could be charged with

22   committing an offense while on release.  And if you are convicted

23   of that charge, you could get an additional 10 years in prison and

24   up to $250,000.  When I say "additional," that means that time on

25   that new charge would run consecutive or in addition to any time

1   that you could possibly receive on the charges that you are facing

2   now if you are convicted of those charges.

3           Now, it is -- in addition, it is a crime that is

4   punishable by up to 10 years in prison or a $250,000 fine or both

5   to obstruct a criminal investigation; to tamper with a witness,

6   victim, or informant; to retaliate or attempt to retaliate against

7   a witness, victim, or informant, or intimidate or attempt to

8   intimidate a witness, victim, juror, informant, or officer of the

9   court.  Of course, the penalties for tampering or retaliation or

10  intimidation are significantly more serious if there's an attempted

11  killing or a killing of one of those people identified.

12          Now, if after your release you knowingly fail to appear

13  as the conditions require or to surrender to serve any sentence

14  that may be imposed, that could be another federal charge.  And if

15  you are convicted of it, it would be another 10 years consecutive

16  to whatever time you could possibly get and a $250,000 fine.

17          Now, if you-all agree to release under these conditions,

18  then you'll need to sign this bond paperwork.

19      (Off-the-record discussion between the Court and the clerk.)

20      (Pause.)

21      THE COURT:  All right.  So please review this paperwork

22  with your counsel and sign them if you agree to abide by those

23  conditions.

24      (Pause.)

25          THE COURT:  All right.  Ms. Fuller and Ms. Ross, I'm

1   going to release you on these conditions.  You will need to get a

2   copy of them before -- before you are released and then review them

3   with probation upon release.

4          Now, you-all are facing serious charges.  This is a

5   really serious matter.  You -- really, by being released, it

6   creates a risk that you can really do damage to your case and your

7   future if you make any missteps while on release.

8          I wouldn't be releasing you if I thought you were going

9   to violate your bond.  Okay?  I think you are going to do just

10  fine.  But you are going to need to stay in touch with your

11  attorneys and work with the probation office.  All right?

12         Is there anything else we need to take up in this case,

13  Ms. Carlton?

14         MS. CARLTON:  No, Your Honor.  Thank you.

15         THE COURT:  Mr. Grimes?

16         MR. GRIMES:  No, Your Honor.

17         THE COURT:  Mr. Diviney?

18         MR. DIVINEY:  No, Your Honor.

19         THE COURT:  Thank you.  Then I would ask the marshal to

20  declare Court in recess.

21     (Thereupon, these proceedings were adjourned at 3:36 p.m.)

22     I, court-approved transcriber, certify that the foregoing is a

23  correct transcript from the official electronic sound recording of

24  the proceedings in the above-entitled matter.

25         _____/s/ Carol Jacobs White_____  ____July 17, 2018____
              Signature of Approved Transcriber          Date